FILED NOV 19 '26 PM04:10 USDC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF ALABAMA**

**SOUTHERN DIVISION**

| | |
|---|---|
| JAMES F. EDDINS II,<br><br>Plaintiff,<br><br>v.<br><br>BUSINESS INFORMATION SOLUTIONS, INC., d/b/a BIS; and JOHN DOES 1–10,<br><br>Defendants. | Civil Action No. 26-cv-547-KD-MU<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

Plaintiff James F. Eddins II, appearing pro se, alleges as follows. Allegations about Plaintiff's own acts are made on personal knowledge; all other allegations are made on information and belief formed from the records identified below, each of which Plaintiff holds and identifies by its SHA-256 value so that the copy relied on can be matched to any copy produced in this action.

## NATURE OF THE ACTION

1. This is an action against a managed information-technology service provider that was given privileged administrative access to Plaintiff's computers and business systems, installed its own remote-access and monitoring agents on them, and did not give that access up when its engagement ended. Plaintiff's records show an address used for the provider's business signing in to Plaintiff's systems and accounts long after any authority to do so had ended — most recently on 13 February 2026. Plaintiff brings claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), and the Stored Communications Act, 18 U.S.C. §§ 2701 and 2707, together with related claims under Alabama law.

FILED NOV 19 '26 PM04:50 USDCALS

2. Plaintiff calls this conduct custodial usurpation: a trusted third party with privileged custodial access exercising control over an owner's systems without right or process. It is not an intrusion from outside a boundary. It is a taking from inside one, by a party the owner had let in. The United States government's own published advisories describe the same mechanism (Part F below).

**PARTIES**

3. Plaintiff James F. Eddins II is an individual residing at 606 Bon Secour Street, Fairhope, Baldwin County, Alabama 36532. He is a United States Marine Corps veteran and the founder and sole principal of 4KAST® ADVISORS LLC, 4KAST® SYSTEMS LLC and 4KAST® INVESTMENTS LLC. He owns United States Trademark Registration Nos. 6,922,911, 7,281,211 (4KAST) and 7,281,213. Every computer and device described in this Complaint is and always has been Plaintiff's property.

4. Defendant Business Information Solutions, Inc. ("BIS") is a managed information-technology and cybersecurity services company with its principal office at 21530 Professional Drive, Robertsdale, Baldwin County, Alabama 36567. BIS also lists offices at 3690 Carlyle Close E., Mobile, Alabama 36609, and 31 East Fairfield Drive, Suite B, Pensacola, Florida 32501, operates under the "askbis.com" domain, and has done business under variants of its name, including as a division of "BIS Technology Group." If BIS's registered name differs, Plaintiff will correct it by amendment.

5. Defendants John Does 1–10 are persons and entities, whose identities are not yet known to Plaintiff, who acted with, for, or through BIS, or who used BIS's access, credentials, agents or infrastructure, in the conduct alleged. Plaintiff will amend to name them when they are identified.

**JURISDICTION AND VENUE**

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Counts I and II arise under federal statutes, 18 U.S.C. § 1030(g) and 18 U.S.C. § 2707. The Court has

FILED NOV 19 '26 PM04:50 USDCALS

supplemental jurisdiction over Counts III through VI under 28 U.S.C. § 1367(a) because they form part of the same case or controversy.

7. Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(1) and (b)(2). BIS resides in Baldwin County, Alabama; Plaintiff resides there; and a substantial part of the events giving rise to the claims occurred there, on Plaintiff's computers in Fairhope.

8. Related proceeding: Plaintiff is a party to *Eddins v. Kestra Financial, Inc., et al.*, No. 1:26-cv-00138-KD-MU (S.D. Ala.). BIS is not a party to that action. This action is brought independently of it.

## FACTS

### A. BIS is engaged and given privileged access

9. On 6 February 2023 Plaintiff engaged BIS to provide managed information-technology services for his businesses. In that role BIS received privileged administrative access to Plaintiff's Microsoft 365 tenants, his user directory, and his workstations.

10. Before BIS's engagement, Plaintiff's business tenant had been established and administered through GoDaddy from 2021 through January 2023. Plaintiff's records of that period — the tenant record, tenant identifier records of 22 July 2021 and 22 July 2022, the account profile, the registration-name record, and invoices through 31 January 2023 — are held in his chain-of-custody log (Table 1).

### B. BIS installs its own remote-access and monitoring agents

11. In March 2023 BIS staged and installed its own remote-access and monitoring software on Plaintiff's systems. Plaintiff's records include installer files dated 14 March 2023 for a ConnectWise Control (ScreenConnect) remote-access client, a remote monitoring and management agent, and an endpoint agent, together with a Liongard monitoring agent installer dated 22 March 2023.

12. The Windows Installer log for the Liongard agent (SHA-256 `3816b8faf48fbe61c78247`

FILED NOV 19 '26 PM04:50 USDCALS

a77a9a3c14b4cd080e9c0f9247183ae37b31640d6d) records that on 22 March 2023, between 21:56:15 and 21:58:14, the package was run from a folder named C:\BIS\, without a user interface, under a system or service account, and was registered to BIS's account at Liongard's instance us2.app.liongard.com. Liongard's registration reply, recorded in the same log, identifies the agent as Agent ID 15319, named "DELL-DESKTOP," machine GUID 756abf6e-3e25-49d5-8f50-105705023431, under access key c06e80e0323d1c5dd99f. The log also records BIS's account and agent secrets in plain text; Plaintiff has not used them and does not set them out here.

13. That agent reports to an account BIS controls, not to any account Plaintiff controls. BIS's remote-access infrastructure includes the ScreenConnect host connect.askbis.com, at Internet Protocol address 69.85.193.212 on the Uniti Fiber network in Alabama, and the remote monitoring and management endpoint askbis.rmmservice.com.

**C. BIS alters the identity of Plaintiff's tenant**

14. During its engagement BIS inserted the trademark character "™" (Unicode U+2122) into the tenant name, the directory name and the display name of Plaintiff's business tenant. Plaintiff's GoDaddy-period tenant records, through January 2023, carry no such character. The character persisted after BIS's engagement: a cost-management export of the tenant dated 18 June 2024 bears the tenant name "4Kast ADVISORS LLC™" (Table 1).

15. The inserted character altered the identity strings by which the tenant and its users are recognized and caused disruption to the tenant's operation. When Plaintiff raised it, BIS's lead technician maintained that it caused no problem, and BIS did not correct it.

**D. The engagement ends, and BIS does not give up its access**

16. In 2023 Plaintiff ended BIS's engagement. BIS waived its balance and cancelled all contracts, and Plaintiff received a zero balance from BIS. From that point BIS had no authority to access Plaintiff's computers, tenants, accounts or data.

17. BIS nonetheless continued to hold live accounts inside Plaintiff's Microsoft tenant

FILED NOV 19 '26 PM04:50 USDCALS

after its engagement ended. Plaintiff demanded, through Microsoft support requests 2403190040011630, 2403190040011855 and 2403220040010937, that the providers in the chain be removed from every partner relationship on his tenants.

18. BIS's officer conditioned the waiver of BIS's balance and the cancellation of all contracts on Plaintiff's retracting a negative review of BIS that Plaintiff had posted. Plaintiff did so.

**E. Access after authority ended**

19. **5 November 2024.** Plaintiff's Microsoft tenant sign-in records show twenty-seven successful sign-ins, among 7,291 sign-in events that day, from the static Internet Protocol address 69.85.195.148, a Uniti Fiber address in Alabama that Plaintiff identifies as the static address used for BIS's business, on the same Uniti Fiber network as BIS's ScreenConnect host in paragraph 13. The sign-ins presented the user agent "Pale Moon 33.4.1." Plaintiff has never used that browser. Plaintiff's records also hold a Pale Moon 33.4.1 installer and its installation log dated the same day (installation log SHA-256 `d3acca9b2981728892054810d8b9c3a88b2a63100 2793d34d8f65b0635213ec3`). Plaintiff has stated the sign-in finding under penalty of perjury in No. 1:26-cv-00138.

20. On the same day, 5 November 2024, an account on the web service start.me under the username "Moonshot," in the name of BIS's principal, was upgraded by purchase. start.me's confirmation and invoice emails are in Plaintiff's possession. Plaintiff has never used start.me.

21. **13 February 2026.** Proton AG's own account event export for `zyk5@protonmail.com` — Plaintiff's own Proton account, which he had supplied to the Financial Industry Regulatory Authority as his contact address in a pending proceeding — records a sign-in from the same address, 69.85.195.148: sign-in attempt at 17:49:28 UTC, success awaiting second factor at 17:49:35 UTC, sign-in success at 17:49:49 UTC, and sign-out at 18:03:23 UTC. There were no failed attempts. The session presented Chrome on Windows. The party signing in held both

FILED NOV 19 '25 PM04:50 USDCALS

Plaintiff's password and his second factor. Uniti Fiber has never been Plaintiff's internet service provider (Proton export SHA-256 b58683053958d4299d3356995629c62836531e82c695a3809a20315ab81b619b). 13 February 2026 was the day after the complete case document set in that proceeding first became available to Plaintiff.

22. Plaintiff never authorized BIS, or anyone using the address 69.85.195.148, to access his tenant, his workstations or his Proton account after BIS's engagement ended. Each access described in paragraphs 19 through 21 was without authorization.

23. The conduct is continuing. Plaintiff has preserved his records, has reported the conduct to federal law enforcement, and has taken no remedial step on the affected accounts beyond demanding preservation, so that the records remain intact for examination.

**F. The government's own advisories describe this mechanism**

24. The following publications of the United States government describe access gained and held through a trusted managed service provider with privileged access, and the misuse of remote monitoring and management software, which is the mechanism alleged here. Plaintiff holds each and identifies it by SHA-256:

FILED NOV 19 '26 PM02:50 USDCALS

| **Publication** | **SHA-256** |
|---|---|
| NCCIC IR-ALERT-MED-17-093-01C, *Intrusions Affecting Multiple Victims Across Multiple Sectors* (2017) | 961e132d42937d0a9203dde85a4d2a529f<br>0f9a1626eeacca7cb944083f9d4bbf |
| US-CERT TA18-276B, *Advanced Persistent Threat Activity Exploiting Managed Service Providers* (2018) | f990d3acdd35c41ff7eefae1591e2af547<br>bfdce1a6311038ab8386f87b2bea3b |
| US-CERT TA18-276A, *Using Rigorous Credential Control to Mitigate Trusted Network Exploitation* (2018) | f9d51a5e13ebab53db52bea3e3c387c746<br>3ea3c0e6e0d48098c799b282bcd413 |
| CISA AA20-245A (2020) | a5c39e2143ac8b87ce88cc1a6289b447f3<br>6417cf1220ac72b8ba6875b44a4f47 |
| CISA AA22-131A, joint advisory on managed service providers and their customers (2022) | 3c0599616b2533cb11f7c4f5ae28070976<br>c3e2480204c277482e893e65a4cb11 |
| CISA AA23-025A, *Protecting Against Malicious Use of Remote Monitoring and Management Software* (2023) | 717240ba8b8e1b06e786407ef196d36ca0<br>3d0c6069f54e09fae5562fbad1d93b |
| NIST Mobile Threat Catalogue EMM-6, *Unauthorized Enrollment in MDM* | ce6f0ae3dbe963032ef7b65d998b24008c<br>44b26b621958f0efb0507bad81be42 |
| CISA Insights, *Risk Considerations for Managed Service Provider Customers* | 81c4e59ba275699f7bbbed36645f3fd2ff<br>30d111dc54e87ab43946769d0f1112 |
| CISA Insights, *Guidance for MSPs and Small and Mid-sized Businesses* | 41690f0ca3bc1f7c87bf2a56653e92b577<br>be1dee0bb47a417a2466b7979507b4 |

FILED NOV 19 '26 PM04:50 USDCALS

**G. Plaintiff's records (Table 1)**

| Record | SHA-256 |
|---|---|
| GoDaddy tenant record (GODADDY TENANT.pdf) | 88c46eddc444df46b042a304f9e2f03d81bf55b927 6b154ed9a1a38be8e95790 |
| GoDaddy tenant identifier, 22 July 2021 | e555ddaef7ed362c57a825fc1fc721db78dc590aa9 7fb7d9a53e6c37c544d454 |
| GoDaddy tenant identifier, 22 July 2022 | 626173eb194f8640037bf351748fcae472e4db7b41 2b59dcaef064679ab4074f |
| GoDaddy tenant account profile | f74d3d84ec5f072d846b8c4cebeb7b3dce7a64dac6 4e8f2394807801d1dcdfe8 |
| GoDaddy tenant registration name | b31f51f120c74260ec84597c9a57d597fc75eb2011 1838d719761b3644cf479f |
| GoDaddy tenant invoice, 31 January 2023 | e89291e0aa5e36c4457507953b510dcf0349450bbf 8c2366f3df2c62241f21dc |
| Tenant cost-management export, 18 June 2024, "4Kast ADVISORS LLC™" | 1bc5e1b6f67ca5e55525ae91e275c60291eaba8ac1 c880c84e96c54859845bcd |
| Liongard agent Windows Installer log, 22 March 2023 | 3816b8faf48fbe61c78247a77a9a3c14b4cd080e9c 0f9247183ae37b31640d6d |
| Pale Moon 33.4.1 installation log, 5 November 2024 | d3acca9b2981728892054810d8b9c3a88b2a631002 793d34d8f65b0635213ec3 |

**H. Plaintiff's loss**

25. As a result of the conduct alleged, Plaintiff has suffered loss, including the cost of responding to the unauthorized access, of assessing the damage to his systems and data, and of attempting to restore them, and revenue lost and costs incurred because of the interruption of his businesses' systems. That loss exceeded $5,000 in value during a one-year period. Plaintiff's software platform, scheduled to go live in March 2023, has never opened.

## CLAIMS FOR RELIEF

**COUNT I — Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), (a)(5), (g) (against all Defendants)**

26. Plaintiff incorporates paragraphs 1 through 25.

27. Plaintiff's workstations, his Microsoft tenant and the Proton servers hosting his account are protected computers within 18 U.S.C. § 1030(e)(2), used in and affecting interstate

FILED NOV 19 '26 PM04:51 USDCALS

and foreign commerce and communication.

28. Defendants intentionally accessed those protected computers without authorization, or exceeded authorized access, and thereby obtained information, in violation of § 1030(a)(2)(C); and knowingly caused the transmission of programs, codes and commands, and intentionally accessed those computers without authorization, causing damage and loss, in violation of § 1030(a)(5)(A)–(C).

29. The violation caused loss to Plaintiff aggregating at least $5,000 in value during a one-year period, within § 1030(c)(4)(A)(i)(I). Plaintiff is entitled under § 1030(g) to compensatory damages and injunctive relief.

**COUNT II — Stored Communications Act, 18 U.S.C. §§ 2701, 2707 (against all Defendants)**

30. Plaintiff incorporates paragraphs 1 through 25.

31. Microsoft's hosting of Plaintiff's tenant mailboxes and Proton AG's hosting of Plaintiff's Proton account are facilities through which an electronic communication service is provided.

32. Defendants intentionally accessed those facilities without authorization, or intentionally exceeded an authorization, and thereby obtained, altered, or prevented Plaintiff's authorized access to wire or electronic communications while in electronic storage, in violation of 18 U.S.C. § 2701(a), with a knowing or intentional state of mind.

33. Plaintiff is entitled under § 2707(b) and (c) to actual damages and any profits made by Defendants, and in no case less than the statutory sum of $1,000; to punitive damages for willful or intentional violation; to equitable relief; and to costs.

**COUNT III — Trespass to Chattels (Alabama law) (against all Defendants)**

34. Plaintiff incorporates paragraphs 1 through 25.

35. Plaintiff's computers, devices and systems are his personal property. Defendants intentionally intermeddled with them, without authorization, by keeping their agents installed

FILED NOV 19 '26 PM04:51 USDCALS

and registered, by holding accounts inside Plaintiff's tenant, and by accessing Plaintiff's systems after their authority ended, impairing the condition, value and use of that property and depriving Plaintiff of its exclusive use. Plaintiff is entitled to compensatory damages and, because the trespass was willful, to punitive damages.

**COUNT IV — Invasion of Privacy by Intrusion (Alabama law) (against all Defendants)**

36. Plaintiff incorporates paragraphs 1 through 25.

37. Defendants intentionally intruded into Plaintiff's private accounts, communications and records — including the Proton account described in paragraph 21 — in a manner that would be highly offensive to a reasonable person, causing Plaintiff injury.

**COUNT V — Breach of Contract (Alabama law) (against BIS)**

38. Plaintiff incorporates paragraphs 1 through 25.

39. Plaintiff and BIS were parties to an agreement under which BIS provided managed information-technology services. BIS was bound by that agreement, and by the duty implied in every such agreement, to perform its services in a skillful and workmanlike manner and, when the engagement ended, to relinquish its access and remove its agents, accounts and partner relationships.

40. BIS breached the agreement by inserting the character described in paragraph 14 into the identity of Plaintiff's tenant and refusing to correct it, and by failing, when the engagement ended, to relinquish its access and to remove its agents, accounts and partner relationships. Plaintiff performed his obligations. Plaintiff was damaged by the breach.

**COUNT VI — Negligence and Wantonness (Alabama law) (against BIS)**

41. Plaintiff incorporates paragraphs 1 through 25.

42. As the holder of privileged administrative access to Plaintiff's systems, BIS owed Plaintiff a duty to exercise reasonable care in controlling, securing and relinquishing that access and the credentials, agents and infrastructure through which it was exercised.

FILED NOV 19 '26 PM04:51 USDCALS

43. BIS breached that duty, and did so with reckless or conscious disregard of Plaintiff's rights, by leaving its agents registered, its accounts in place and its access available after its engagement ended, with knowledge that injury was likely to result, proximately causing the injury and loss described above.

## PRAYER FOR RELIEF

Plaintiff asks the Court to enter judgment for him and against Defendants, and to award:

(a) compensatory damages in an amount to be proven at trial;

(b) under 18 U.S.C. § 2707(c), actual damages and Defendants' profits, and in no case less than $1,000;

(c) punitive damages under 18 U.S.C. § 2707(c) and under Alabama law;

(d) injunctive relief requiring BIS, and all acting with it, (i) to cease all access to Plaintiff's computers, tenants and accounts; (ii) to identify in writing, and to deregister and remove, every agent, account, credential, partner relationship and enrollment through which BIS has had access to Plaintiff's systems, including Liongard Agent ID 15319; and (iii) to preserve every record of that access, including the records of its Liongard, remote monitoring and management, and ScreenConnect accounts;

(e) costs; and

(f) such other relief as is just.

FILED NOV 19 '26 PM04:51 USDCALS

**JURY DEMAND**

Under Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

Dated: November 19, 2026
Respectfully submitted,

*/s/ James F. Eddins II*

James F. Eddins II, Plaintiff, pro se
606 Bon Secour Street
Fairhope, Alabama 36532
(251) 348-9980
orum@tuta.com